IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARYAM JAMILAH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-1080 |
| | § | |
| COLIN POWELL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff, Maryam Jamilah, challenges the decision to deny her husband, a resident and citizen of Jordan, an immigration visa. Jamilah has sued Colin Powell, Secretary of State of the United States; James W. Ziglar, Commissioner of the United States Immigration and Naturalization Service;[1] and John Does I-IV, employees of the Department of State and/or the Immigration and Naturalization Service ("INS"). Plaintiff alleges that her husband's immigration visa was denied due to race, age, religious and/or sex discrimination, in violation of 24 U.S.C. §§ 1981 and 1983. (Docket Entry No. 17). Defendants have moved to dismiss the suit for lack of subject

---

[1] Plaintiff named Kevin D. Rooney, Acting Commissioner of the Immigration and Naturalization Service, in her amended complaint. Rooney has since been replaced by Ziglar as Commissioner of the INS. Ziglar is substituted for Rooney under Federal Rule of Civil Procedure 25(d).

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendants argue that neither the decision of the consular officer at the United States Embassy in Amman, Jordan not to issue the visa, nor the decision of the INS Texas Service Center revoking approval of the immigrant visa petition, is subject to review by this court.

Based on a careful review of the complaint, the parties' submissions and the applicable law, this court GRANTS the defendants' motion to dismiss as to the claims regarding the decisions made by the consular official in Amman, Jordan. This court DENIES the defendant's motion to dismiss as to the claims regarding the INS's handling of the visa petition. The reasons for these rulings are set out below.

**This court will hold a pretrial and scheduling conference on February 15, 2002, at 2 p.m.**

I.  Background

In her complaint, Jamilah describes herself as a "51 year old African-American muslim" woman who, in February 1999, "married in a proxy marriage ceremony the 25 year old white Jordanian muslim," Laith Ahmed Al-Sweedan. Jamilah and Al-Sweedan met when he responded to a matrimonial advertisement Jamilah had posted on an Islamic website. (Docket Entry No. 17, Plaintiff's First Amended Complaint). In November 1999, the two were married in Amman, Jordan,

in a wedding ceremony at which both were present. Jamilah submitted an I-130 form (Petition for Alien Relative) to the United States Embassy in Amann, seeking to have Al-Sweedan immigrate to the United States. The application was refused. Jamilah was told to submit the application to the INS upon returning to the U.S., which she did.

The INS approved Jamilah's I-130 petition for an immigrant visa for Al-Sweedan on June 5, 2000. On September 19, 2000, Al-Sweedan appeared for an interview at the United States Embassy in Amman. The consular official refused to issue the visa. The consular official completed Form 194, and provided Al-Sweedan with a copy, explaining that he found Al-Sweedan ineligible for a visa under section 221(g) of the Immigration and Nationality Act, 8 U.S.C. § 1201. (Docket Entry No. 3, Attach. 5). The petition was returned to the INS for review. *Id.*

On November 6, 2000, James Burzynski, the Director of the INS Texas Service Center, sent Jamilah a notice of intent to revoke the prior approval of the I-130 petition. (Docket Entry No. 3, Attach. 7). The notice of intent to revoke stated that it was "based upon evidence provided by the American Embassy, which reflected that the beneficiary entered into a marriage with you solely for the purpose of obtaining legal permanent residency in the United States." *Id.* The notice stated that Jamilah had thirty days in which to submit "detailed documentary evidence" in

support of the petition and "in opposition to the revocation." *Id.* The accompanying page listed documents that could be accepted as evidence of the relationship the petitioner was attempting to establish, such as birth certificates, property documents, affidavits from disinterested persons, correspondence, or income tax returns. *Id.* Jamilah submitted a response, which included only a copy of Al-Sweedan's birth certificate. (Docket Entry No. 3, Attach. 8).

Jamilah appealed the INS's revocation of the approval of her visa petition to the Board of Immigration Appeals ("BIA"). On August 6, 2001, the BIA summarily dismissed Jamilah's administrative appeal of the INS's decision to revoke approval of the visa petition she filed on behalf of Al-Sweedan. Under 8 C.F.R. § 3.3(a)(2), an appeal to the BIA "is not properly filed until its receipt with the appropriate office of the Service together with all required documents and fees." Although mailed in late January 2001, Jamilah's notice of appeal was not received by the INS until February 1, 2001. (Docket Entry No. 3, Attachs. 10 & 11). There is no exception to the requirement that the notice of appeal must be received by the required date for the administrative appeal to be perfected. *See Smith v. Conner*, 250 F.3d 277, 279 (5th Cir. 2001) (appeal to BIA that was mailed, but not received, on the deadline for filing an appeal was untimely). The Board of Immigration Appeals noted

that the decision did not preclude Jamilah from filing a new visa petition on behalf of Al-Sweedan. (Docket Entry No. 18, Ex. A).

In this lawsuit filed on March 30, 2001, Jamilah alleged that defendants violated her constitutional rights when the consular official at the United States Embassy in Amman refused to issue the immigrant visa to Al-Sweedan and when the INS revoked its approval of the visa petition she had filed on her husband's behalf. (Docket Entry No. 17). Specifically, she alleges that defendants have violated her right freely to exercise her religion by placing restrictions on her marriage choice. *Id.*, ¶ 35. Jamilah argues she has a natural and constitutional right to bear children with the husband of her choice, and that her time for doing so is waning. *Id.*, ¶ 31. She alleges that her right to procedural due process at the administrative level was violated when her husband's visa was denied capriciously and arbitrarily. *Id.* Jamilah also alleges racial discrimination, as a basis for the visa denial, claiming a violation of section 1981 and the Ninth Amendment to the United States Constitution. *Id.* She also alleges that defendants are depriving her of property without due process, including depriving her of the wages Al-Sweedan would earn if he were allowed to immigrate to this country.

Defendants have moved to dismiss all claims, arguing that this court lacks subject matter jurisdiction to review the two decisions Jamilah challenges in this

suit. Defendants argue that the decision of the consular officer in the Visa Section of the United States Embassy in Amman, Jordan not to issue the immigrant visa is shielded from judicial review by the doctrine of consular non-reviewability. Defendants also argue that this court lacks subject matter jurisdiction to review the INS's revocation of the approval of the immigrant visa petition because Jamilah failed to exhaust her administrative remedies.

## II. Analysis

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be granted on the complaint and undisputed facts, or disputed facts resolved by the court. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court must take as true all the allegations in the complaint. *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995). The plaintiff carries the burden of establishing that the court has jurisdiction. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Defendants argue that this court does not have subject matter jurisdiction over Jamilah's claims due to the doctrine of consular nonreviewability and Jamilah's failure to exhaust her administrative remedies.

### A. Nonreviewability of Consular Decisions

The Immigration and Nationality Act grants authority over the issuance of visas to United States consular officers. 8 U.S.C. §§ 1104(a), 1201, 1202. Under the doctrine of consular nonreviewability, federal courts do not have jurisdiction to review a consular officer's denial of a visa. *See, e.g., Centeno v. Shultz*, 817 F.2d 1212, 1213 (5th Cir. 1987); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986). The courts in the Fifth Circuit have consistently held that the decisions of United States consuls on visa matters are not subject to judicial review. *See Perales v. Casillas*, 903 F.2d 1043, 1046 (5th Cir. 1990); *Mulligan v. Schultz*, 848 F.2d 655, 657 (5th Cir. 1988); *Centeno*, 817 F.2d at 1213; *Aggarwal v. Secretary of State U.S.*, 951 F.Supp. 642, 647 (S.D. Tex. 1996).

Jamilah argues that the doctrine of consular nonreviewability does not eliminate subject matter jurisdiction over her claims because the manner in which the State Department handled her visa petition is subject to judicial review. (Docket Entry No. 16, at 3-5). Jamilah cites *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1987), to support her argument that the actions of the consular official at the United States Embassy in Amman are reviewable by this court. *Patel*, however, does not support Jamilah's argument.

In *Patel*, the plaintiff had filed visa petitions on behalf of his spouse and her two children. The petitions were approved and forwarded to the United States

Consulate in Bombay, India. *Id.* at 931. The United States Consulate in Bombay conducted an investigation of the Patels' marriage and discovered indications that the marriage which served as the basis for his citizenship was null and void. The consulate in Bombay "refused" the visa petition, neither approving nor denying it, pending denaturalization proceedings against Patel. *Id.* The Patels filed a mandamus action, seeking to compel the consular officer to grant or deny the visa applications. The Patels did not seek judicial review of a consular officer's decision not to issue the visa. *Id.*

The *Patel* court conceded that it did not have jurisdiction to review a consular officer's discretionary decision to refuse to issue a visa. *Id.* at 931-32. The court distinguished the decision it was reviewing:

> Normally, a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. . . . The Patels are challenging the consul's authority to suspend their visa applications, not challenging a decision within the discretion of the consul. Therefore, jurisdiction exists to consider whether the consulate had the authority to suspend the visa applications.

*Id.* The *Patel* court held that while an officer's substantive decision to grant or deny the visa petitions was not subject to judicial review, the procedural action by the consular officer to withhold a decision on the issuance of the visas could be reviewed. *Id.* at 932.

The *Patel* court observed that when the consular officer held the visa petitions in abeyance, he did not follow the procedures prescribed by the regulations for immigrant visa refusals. The consular officer had not complied with 22 C.F.R. § 42.81(b), because he did not provide the applicant with a standard, signed refusal form citing the legal basis for the refusal. *Id.* The court did not review the officer's reason for denying the issuance of a visa. Instead, it ordered the officer either to refuse or issue the visa, in accordance with the federal regulations. *Id.* at 933.

Unlike the plaintiffs in *Patel*, Jamilah seeks review of the decision of the United States consul denying her spouse an immigrant visa. The consular officer in this case complied with the procedural requirements for refusing to issue an immigrant visa. On September 19, 2000, Al-Sweedan was given a standard immigrant visa refusal form, Form 194, signed by the consular officer. The form stated that Al-Sweedan was refused a visa under section 221(g) of the Immigration and Nationality Act, and that the petition would be returned to the INS for review. (Docket Entry No. 3, Attach. 5). *See Aggarwal v. Secretary of State of the United States*, 951 F.Supp. 642 (S.D. Tex. 1996). The review Jamilah requests is review of a consular decision to refuse to issue a visa. Exercising jurisdiction over this case would violate the well-established principle of nonreviewability of a consular officer's decision to grant or deny a visa. This court lacks subject matter jurisdiction

over Jamilah's claims arising out of the consular officer's discretionary decision to refuse to issue an immigrant visa to Al-Sweedan.

### B. Exhaustion of Administrative Remedies

The other claims Jamilah raises in this suit are based on the INS's actions in revoking the approval of the visa petition Jamilah filed on behalf of her husband. Defendants argue that this court does not have subject matter jurisdiction to review the actions of the INS because Jamilah failed to exhaust her available administrative remedies.

Defendants rely heavily on *Townsend v United States Dep't of Justice I.N.S.*, 799 F.2d 179 (5th Cir. 1986) in support of their argument that exhaustion of remedies is a jurisdictional prerequisite. (Docket Entry Nos. 13 & 18). In *Townsend*, the Fifth Circuit noted that when exhaustion is statutorily mandated, the requirement is jurisdictional. *Townsend*, 799 F.2d at 181 (citing *Eluska v. Andrus*, 587 F.2d 996, 999 (9th Cir. 1978)). The statute at issue in *Townsend* specifically provided that a deportation order is not subject to review if the alien has not exhausted the administrative remedies. *Id.* (citing 8 U.S.C. 1105a(c) (repealed)); *see also Nehme v. I.N.S.*, 252 F.3d 415, 420 (5th Cir. 2001) (discussing similar provision now codified at 8 U.S.C. 1252(d)(1)).

The statute and regulation at issue in this case do not contain an express exhaustion requirement. In *Young v. Reno*, 114 F.3d 879 (9th Cir. 1997), the only court to consider this issue held that exhaustion of remedies is not a jurisdictional requirement under the statute and accompanying regulation governing decisions to revoke visa petition approvals because the regulation make appeals to the BIA optional. *But see Te Keui Liu v. INS*, 645 F.2d 279, 283 (*dicta* suggesting that exhaustion of remedies is necessary before a court may review the INS's handling of a visa petition).

Under 8 U.S.C. § 1155, the "Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any [visa] petition . . . ." Notice of such a revocation must be "mailed to the petitioner's last known address." *Id.* The applicable regulations provide that an INS officer who is authorized to grant an immigrant visa petition may revoke the approval of a petition "on any ground" when "the necessity for the revocation comes to the attention of the Service." 8 C.F.R. § 205.2(a). The INS officer must first give the petitioner notice and "an opportunity to present evidence in support of the petition or self-petition and in opposition to the grounds alleged for revocation of the approval." *Id.* at 205.2(b). After a petition is revoked, the petitioner "*may* appeal the decision to revoke the

approval." 8 C.F.R. § 205.2(d) (emphasis added). The BIA has appellate jurisdiction over an appeal, if one is filed. 8 C.F.R. § 3.1(b)(5).

Exhaustion of administrative remedies serves multiple goals: it provides agencies an opportunity to correct their errors; to compile a record adequate for judicial review; and to afford parties and the courts the benefit of agency experience and expertise. *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). The Supreme Court discussed the exhaustion requirement at length in *McCarthy v. Madigan*, 503 U.S. 140 (1992). In *McCarthy*, the Court held that a federal prisoner who sought to file a *Bivens* suit against four prison employees need not first invoke the Bureau of Prisons' internal grievance procedure. The Court began by noting that "[w]here Congress specifically mandates, exhaustion is required. . . . But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* at 144.[2]

In discussing how courts should exercise their discretion, the *McCarthy* Court noted that the exhaustion requirement reflects twin purposes: protecting administrative agency authority and promoting judicial efficiency. *Id.* at 145. The Court stated that "[i]n determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal

---

[2] The statute at issue in *McCarthy* has now been modified explicitly to require exhaustion. *See, e.g., Booth v. Churner*, 532 U.S. 731 (2001).

judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146. According to the Court, the individual's interests weigh heavily against exhaustion in three situations: when exhaustion "may occasion undue prejudice to subsequent assertion of a court action"; when an administrative remedy may be inadequate because it cannot resolve the issue at hand; or when the agency is either biased or has otherwise predetermined the issue. *Id.* at 147-48; *see Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995) (exhaustion of remedies is not required when "available remedies provide no genuine opportunity for adequate relief" or "administrative appeal would be futile" (quoting *Guitard v. U.S. Sec'y of the Navy*, 967 F.2d 737, 741 (2d Cir.1992)).

In this action, Jamilah asserts claims that the INS based its decision to revoke the approval of her visa petition on unconstitutional, discriminatory grounds. Her optional, administrative appeal to the BIA has been dismissed as untimely, which means the issues Jamilah raises cannot be resolved by that administrative body. Her failure timely to perfect her BIA appeal effectively eliminated one tier of administrative review over her challenges to the administrative findings of fact made by the INS officer and the INS officer's exercise of discretionary authority. However, Jamilah seeks money damages, a declaratory judgment, and an injunction as relief. The BIA could not have awarded money damages or an injunction, even if her appeal

had been timely. The policies advanced by requiring exhaustion of administrative remedies are not offended by judicial review of the plaintiff's claims related to the actions of the INS in revoking the approval of the visa petition she filed on her husband's behalf, despite her failure timely to file an administrative appeal.

### III. Conclusion

For the reasons stated, this court GRANTS defendants' motion to dismiss the plaintiff's claims based on the decision by the consular officer not to issue the visa to Al-Sweedan. This court DENIES defendants' motion as to the plaintiff's claims based on the INS decision to revoke its approval of the visa petition.

**This court will hold a pretrial and scheduling conference on February 15, 2002, at 2 p.m.**

SIGNED on January 30, 2002, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

P.\CASES\2001\01-1080\01-1080.b03                                14